[Crim. No. 14731. In Bank. Jan. 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
HERMAN RAY WILLIAMS, Defendant and Appellant.

COUNSEL

Ronald E. Moe, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edward A. Hinz, Jr., James T. McNally and Edsel W. Haws, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—Defendant Herman Ray Williams and his codefendant Larry Edward Bailey were charged by information with the crime of armed

robbery (Pen. Code, § 211). A jury found them guilty as charged. Williams alone appeals from the judgment of conviction entered on the verdict.

At about 11 p.m., on April 28, 1969, two men entered the Hancock service station on Franklin Boulevard in Sacramento. Richard Gomes, the station attendant, testified that they demanded money and that both of them were armed. They took all the money from the cash drawer and then proceeded to walk south on Franklin. Immediately thereafter Gomes flagged down a patrol car, told the officers he had been robbed, gave a description of the two men, and indicated the direction in which they fled.

A short distance from the service station the officers spotted two suspects, stopped their patrol car, and gave pursuit. Other patrol cars had sealed off the area, and within a few minutes codefendant Bailey was apprehended. Bailey, who was carrying a revolver and $58.77 in cash, was positively identified by Gomes as the shorter of the two robbers.

Although the other suspect escaped, the officers discovered an unoccupied car in a nearby parking lot. A routine check of the car revealed that it was registered to appellant. An automatic pistol was found on the front seat and appellant's fingerprints were found on the exterior of the car.

About three hours after the robbery the investigating officers showed five photographs to Gomes, including one of appellant. Gomes selected appellant's picture and stated that it strongly resembled the second robber, but that he would have to see the man in person to be absolutely positive.

That same night the officers went to appellant's house where they questioned his father about his son's whereabouts. The following evening appellant telephoned the sheriff's office and indicated he had been informed by his father that they were looking for him. The officers then went to his home and placed him under arrest.

On April 30, 1969, appellant was placed in a lineup at the sheriff's office. Appellant's attorney was present in the viewing room with the witness Gomes while the lineup was conducted. The attorney testified that the lineup was arranged fairly and that the officers did not give Gomes any suggestions as to the suspect. Following completion of the lineup Gomes was taken outside the viewing room for the purpose of making his identification. Appellant's attorney asked permission to accompany Gomes and listen to any identification made by him, but his request was denied upon the grounds that such was against the policy of the sheriff's department.

At trial Gomes testified he was "almost certain" that appellant was. the second robber. On cross-examination Gomes stated that he had selected appellant from the lineup but could not be positive he was the other man

involved. Appellant moved to suppress this identification evidence on the ground that he had been denied his right to the presence of counsel at the pretrial lineup. The trial court denied the motion, holding that the right to counsel did not apply beyond the time the lineup was in progress.

Thus, the main issue before us is whether appellant's right to have counsel present during the lineup included the right to have him present when the identification was made immediately thereafter. We conclude that under the facts of this case the rules enunciated in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], entitled the appellant to such a right and that its denial requires us to reverse the judgment.

In *Wade* and *Gilbert,* the United States Supreme Court held that a pretrial lineup was a "critical stage" of the prosecution at which the accused was entitled to the presence of counsel. The court held that if a witness identified a defendant in a lineup conducted in violation of the defendant's right to counsel, subsequent in-court identifications by that witness were inadmissible unless shown by clear and convincing evidence to have an origin independent of the illegal lineup. The court further held that if in-court identifications without independent origin were admitted into evidence, the error required reversal unless it was "harmless beyond a reasonable doubt."

The above rules were adopted for two primary reasons: to enable an accused to detect any unfairness in his confrontation with the witness, and to insure that he will be aware of any suggestion by law enforcement officers, intentional or unintentional, at the time the witness makes his identification. It is not the moment of viewing alone, but rather the whole "procedure by which [a suspect] is identified" that counsel must be able to effectively reconstruct at trial. (*People* v. *Fowler* (1969) 1 Cal.3d 335, 348 [82 Cal.Rptr. 363, 461 P.2d 643].) If defense counsel is to be able to intelligently cross-examine the witness, he cannot be excluded from the moment of identification any more than he can be excluded from the lineup itself. To hold otherwise would be to reduce counsel's cross-examination "to little more than shooting in the dark," for he would not be fully apprised of what occurred at the identification interview. (*People* v. *Fowler, supra,* 1 Cal.3d 349.) For example, the defendant would have no way of knowing whether the witness was improperly led, whether the witness was hesitant or unsure in his identification, and he would not know what language or expressions the witness used. All of these factors could be very significant on cross-examination.

In the instant case, counsel's presence at the lineup guaranteed that he would be able to detect any unfairness in the confrontation between appellant and the witness. However, the exclusion of counsel from the moment of actual identification frustrated the second purpose of *Wade* and *Gilbert*, namely, to safeguard against the inherent risks of suggestion which are present at that time. ■ Since Gomes made his identification immediately following conclusion of the lineup, it would not have been an additional burden on the officers of the sheriff's department to allow appellant's attorney to be present. Moreover, we perceive of no legitimate state purpose on the part of law enforcement officers in excluding him. "We cannot reasonably suppose that the high court . . . would announce a rule so susceptible of emasculation by avoidance." (*People* v. *Fowler, supra,* 1 Cal.3d 344.) Accordingly, we hold that appellant was entitled to have his attorney present when Gomes made his identification.

■ At trial the prosecution made no showing that the in-court identification by Gomes had an origin independent of the lineup. Its admission into evidence was therefore a violation of *Wade*. Since the principal evidence against appellant was the less than positive in-court and lineup identifications of the only witness to the crime, we cannot say that the error was "harmless beyond a reasonable doubt" under the standard of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

Our holding in this case should not be interpreted to create a requirement that defense counsel must be present whenever a witness whose testimony may be used as part of the prosecution's case at trial is interrogated. Such an interpretation of this decision would be an unwarranted assumption.

The purpose of a lineup is to elicit identification evidence. The risks and potential dangers in identification interviews are much greater than in other prosecution contacts with a victim or a witness to a crime. Accordingly, the United States Supreme Court has labelled the process of lineup identification as a "critical stage" of the prosecution which requires the presence of counsel. In the case at bar counsel was present at the lineup, the witness was immediately removed from the viewing room for the sole purpose of making his identification, and counsel requested but was refused permission to be present at the moment of actual identification. Under these facts, *Wade* and *Gilbert* compel the conclusion that counsel should have been permitted to be present at the time the identification was made by the witness. We express no opinion on any case which may arise in a different factual setting.

Appellant also contends that the trial court erred in denying his motion for a judgment of acquittal made after the prosecution rested. Since we

must reverse the judgment on other grounds, we need not resolve this contention.

The judgment is reversed.

Peters, J., Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

Although social amenities may have suggested that the sheriff's deputies be hospitable to defendant's counsel at the time they interrogated the witness Gomes subsequent to the lineup, I disagree with the majority that the counsel's presence was required by rules enunciated in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. Nor does *People* v. *Fowler* (1969) 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], contain any holding compelling the result reached by the majority.

The rationale of *Wade* was expressed in this manner: "When the Bill of Rights was adopted, there were no organized police forces as we know them today. The accused confronted the prosecutor and the witnesses against him, and the evidence was marshalled, largely at the trial itself. In contrast, today's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." (388 U.S. at p. 224 [18 L.Ed.2d at p. 1156].) The court was concerned with the mysteries of human perception, and was particularly apprehensive that the unprotected presence of an accused might arouse, through improper suggestion, the subjective image of the culprit carved in the memory of the witness. The key to the court opinion, however, is *presence of the accused*. Throughout the opinion the court refers to the confrontation between the witnesses and the accused, and suggests the prejudice inherent at trial to an accused who offers an "unsupported version" of an unfair lineup. (*Id.* at p. 231 [18 L.Ed.2d at p. 1160].) The court quoted Wall, Eye-Witness Identification in Criminal Cases, page 53, for some striking examples of unfair confrontations: "In a Canadian case . . . the defendant had been picked out of a line-up of six men, of which he was the only Oriental. In other cases, a black-haired suspect was placed among a group of light-haired persons, tall suspects have been made to stand with short non-suspects, and, in a case where the perpetrator of the crime was known to be a youth, a suspect under twenty was placed in a line-up with five other persons, all of whom were forty or over." (*Id.* at p. 232 [18 L.Ed.2d at p. 1160].)

No one can justify rigged lineups; they are indefensible legally and unsupportable as a law enforcement technique. But here the majority would extend the concept of a lineup or showup to include not merely the physical confrontation, but subsequent interrogation of a witness by peace officers. Certainly it cannot be contended that defense counsel has a right to be present whenever officers examine prospective witnesses, and there seems to be no rational reason for requiring counsel's presence merely because the prospective witness previously attended a lineup. Instead of taking the witness Gomes into another room for discussion shortly after termination of the lineup, the officers could have suggested he go home, contemplate the lineup and its participants, and return the next day or next week for a discussion. It could not seriously be urged that counsel for defendant would be entitled to attend that interview. Why, then, should he have a right to be present at the private interview merely because it was held earlier?

Indeed the Supreme Court has hinted that identification by witnesses at the time of the lineup is potentially erroneous. In *Gilbert* the lineup was held in an auditorium with 10 to 13 prisoners placed on a lighted stage. Some 100 witnesses to several alleged robberies were present, and during and after the lineup the witnesses called out the numbers of the men they could identify. This, said the Supreme Court in *Wade,* was "fraught with dangers of suggestion." (388 U.S. at p. 234 [18 L.Ed.2d at p. 1161].)

I find significant in determining the Supreme Court's limitation of the scope of lineup procedure its comment in *Wade* (at p. 238 [18 L.Ed.2d at p. 1164]) that "Concern is also expressed that the presence of counsel will force divulgence of the identity of government witnesses whose identity the Government may want to conceal. To the extent that this is a valid or significant state interest there are police practices commonly used to effect concealment, for example, masking the face." If, as suggested in *Wade,* it would have been proper for the law enforcement officers here to conceal the identity of the witness Gomes and to mask his face during the physical lineup itself, it appears highly unlikely that the *Wade* rule would compel either disclosure of the witness or revelation to defendant's counsel of comments at interrogation subsequent to the lineup.

*Wade* and *Gilbert,* to a distressing extent, left many pragmatic problems unanswered. We were not disposed to provide any answers in *People* v. *Fowler, supra,* 1 Cal.3d at p. 349, footnote 19. And I suggest the majority opinion in this instance will compound the difficulties encountered by law enforcement officers in their essential investigative functions.

The primary question left unresolved by *Wade* and *Gilbert* is the permis-

sible role of the lawyer at lineups. In the absence of judicial or administrative rules, it would appear that defense counsel has no affirmative right to be active during the course of the lineup. He cannot rearrange the personnel, cross-examine, ask those in the lineup to say anything or to don any particular clothing or to make any specific gestures. Counsel may not insist law enforcement officials hear his objection to procedures employed, nor may he compel them to adjust their lineup to his views of what is appropriate. (Note (1967) 77 Yale L.J. 390; Note (1968) 63 Nw. U.L. Rev. 251, 259.)

At most, defense counsel is merely present at the lineup to silently observe and to later recall his observations for purposes of cross-examination or to act in the capacity of a witness. But the latter raises the complex trial circumstance, frowned upon by ethics of the profession, of the lawyer serving in the additional role of a testimonial witness.

By permitting defense counsel to attend interrogation subsequent to the lineup, the majority inject him into the law enforcement investigative process. Not only is this procedure unrequired by authority and undesirable as interference with police technique, but it runs contrary to federal trends subsequent to *Wade* and *Gilbert*. (See, e.g., Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3502; *Russell* v. *United States* (1969) 408 F.2d 1280, 1284 [133 App.D.C. 77].)

Counsel's right to be present at a lineup is dependent upon the presence of the accused at the lineup. The accused, at a critical stage of criminal proceedings, cannot remain unrepresented by counsel. Once the police investigation departs from the accused's presence, then neither he nor his counsel has any right of attendance or observation. In the instant case, counsel was properly present during the confrontation of this defendant and witnesses at the lineup. Once the physical confrontation terminated and interrogation of a prospective witness outside the presence of defendant began, the right of counsel to be present ceased.

I would deem this to be a workable rule of practice: counsel is entitled to attend the physical confrontation at a lineup, but he has no enforceable right to attend subsequent interrogation of witnesses occurring outside the presence of the accused, whether or not the witnesses had been present at the lineup.

I would affirm the judgment.

McComb, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied February 17, 1971. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.