### UNITED STATES of America

### v.

### Emanuel "Bubbles" DANIELS et al.

### Appeal of Robert BATTLES.

### No. 74–1221.

United States Court of Appeals, Third Circuit.

Argued Sept. 10, 1974.

Decided Dec. 30, 1974.

Ronald A. Berlin, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., James A. Villanova, Henry G. Barr, Kathleen Kelly Curtin, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before ALDISERT, ADAMS and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question in this appeal from sentence for bank robbery, 18 U.S.C. § 2113(a) and (d), is whether the trial court improperly admitted identification testimony of a police officer.

A jury found appellant Battles and two co-defendants, Emanuel Daniels and Willie Thomas, guilty of robbing the Noble Manor office of the Pittsburgh National Bank on October 2, 1973. Following the daylight robbery by three individuals wearing ski masks, a regional police alarm sounded to which Pittsburgh Police Sergeant William Armstrong responded. The search focused on a blue Cadillac occupied by three black males. Shortly after 2:00 p.m., the police observed the automobile and a vigorous chase, in which Sergeant Armstrong participated, ensued. Armstrong turned onto Fulton Street and stopped head to head with the fleeing Cadillac, effectively blocking its progress. At this time certain of the car's occupants were shooting at pursuing police. An armed black male emerged from the passenger side of the Cadillac and ran along the sidewalk to the left of Armstrong's police car. As the suspect came abreast, he fired a shot at Armstrong and made good his escape.

On the same day Armstrong was shown an array of police photographs, including front and side views of Battles. He made no identification from the photographs.

Police conducted a lineup on November 13, 1973, and Armstrong identified Battles as the man who emerged from the Cadillac and shot at him. At the subsequent trial, the sole identification testimony implicating Battles with the robbery was that of Sergeant Armstrong. Battles did not testify.

Appellant made a timely motion to suppress Armstrong's identification testimony, alleging, *inter alia*, that the lineup procedure did not comport with the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The trial court ruled:

Now, as to Mr. Battles, the motion to suppress the identification testimony is denied. * * * I further find that Mr. Battles' rights under the principles set forth in the Wade case were not prejudiced by the failure of his counsel to see the lineup forms on the morning of the lineup. He has had ample opportunity to have seen them since. There is nothing to indicate that they have been changed since then.

I find that the lineup conformed with the criteria set down by the Supreme Court in the Wade case, and it was free of undue suggestiveness.

I further find that the two police officers, Sergeant Armstrong and Sergeant Salerno, have *an independent basis* for their identification of the Defendant Battles, and that testimony will not be suppressed.[1]

Appellant advances the contention that the lineup failed to meet the *Wade* requirements because, although his counsel was physically present in the viewing room, counsel was denied an opportunity to examine the results of the viewing by those witnesses who attended the lineup. His counsel was informed that the results would be made available to him the next day at the preliminary examination.

Appellant urges us to invoke the rule of People v. Williams, 3 Cal.3d 853, 92 Cal.Rptr. 6, 478 P.2d 942 (1971), in which a conviction was reversed because defense counsel was denied permission to accompany Gomes, an identifying witness at a lineup, outside the viewing room for the purpose of making the identification. The California court held that Williams "was entitled to have his attorney present when Gomes made his

---

1. S.H. 146–47 emphasis supplied. It appears to be conceded, however, that Sergeant Armstrong was the sole officer to identify Battles. Both Sergeants identified defendant Thomas.

identification." 92 Cal.Rptr. at 9, 478 P.2d at 945. Because "the prosecution made no showing that the in-court identification by Gomes had an origin independent of the lineup," *ibid.*, its admission into evidence was a violation of *Wade.* I do not reach the question whether this court would accept the *Williams* rule because here the trial court made a specific finding that Sergeant Armstrong had a basis for his in-court identification independent of the lineup procedure. For reasons set forth in a separate concurring opinion, Judges Adams and Rosenn find it necessary to consider the applicability of *Williams.*

*Wade* teaches that defects in lineup procedures do not result in a *"per se* rule of exclusion of [in-] courtroom identification," 388 U.S. at 240, 87 S.Ct. at 1939, and instructs that the identification will be admissible if the Government "establish[es] by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. See Murphy v. Waterfront Commission, 378 U.S. 52, 79 n. 18, [84 S.Ct. 1594, 12 L.Ed.2d 678]." 388 U.S. at 240, 87 S.Ct. at 1939 (footnote omitted).

Appellant has challenged the district court's standards for finding an independent basis for Sergeant Armstrong's identification. My independent review of the record of both the suppression hearing and the trial convinces me that the district court's determination was not error.

At trial, describing the daylight Fulton Street incident, Sergeant Armstrong said that he "concentrated" on the person who emerged from the Cadillac; that " . . . I was taking particular note of his face, and that is what I did, and that is how I made an identification of the individual"; that this person was fif-

teen feet away when Armstrong first saw him, "two hood lengths of automobiles and probably two or three feet between us"; that he was "within six or seven feet" when he shot at Armstrong, and that Armstrong actually saw him at the point he fired and observed him for a total period of thirty seconds.[2]

Further, the record discloses this exchange:

Q. Was he pointing the weapon before he got parallel to your vehicle while approaching your vehicle?

A. He had it in front of him in his hand. I was interested in him, whether I could identify him.

N.T. 125.

We are instructed that "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

Although these factors delineate a "totality of circumstances" associated with a confrontation procedure deemed suggestive, I am persuaded that even if applied to Sergeant Armstrong's observations made in hot pursuit of the bank robbers, his identification testimony passes this severe test. Accordingly, I find no error in Judge Teitelbaum's conclusion that the in-court identification of Battles had a basis independent of the lineup.

We have considered the other contentions raised by appellant and find them to be without merit.[3]

---

2. N.T. 82, 83, 125, 84, 135. At a suppression hearing Sergeant Armstrong testified: "I saw his face before he fired the shot at me," that he had a good look, that the lighting conditions were good, and that the gunman's face was not covered or masked. (S.H. 50–51.)

3. The verdict was against the weight of the evidence; the trial court erred in denying de-

fendant's motion for judgment of acquittal and submitting the question of identification to the jury; the lineup identification was an exploitation of an original, unlawful arrest in violation of the Fourth Amendment; FBI Agent Gleason's gratuitous remark concerning defendant's probation constituted grounds for a mistrial.

The judgment of the district court will be affirmed.

ADAMS, Circuit Judge (concurring):

I concur in the judgment of the Court. However, I would affirm the district court only after consideration of the legitimacy of the lineup procedure employed in this case, since I believe such an analysis is required by United States v. Wade[1] and Gilbert v. California.[2]

At the trial of Robert Battles and two codefendants for bank robbery, the major issue with regard to Battles was identity; Battles took the position that he had not participated in the robbery. The only identification testimony linking Battles with the crime was that of Sergeant Armstrong of the Pittsburgh Police Department. At trial, the sergeant unqualifiedly identified Battles as the man who, just after the robbery, shot at him and then escaped.[3] The police officer also testified that he had previously selected Battles from a lineup conducted six weeks after the bank robbery and approximately three months before trial.[4] Accordingly, the reference to the lineup by Armstrong could reasonably have been taken by the jury as corroborative of the police officer's recollection, and therefore of some significance in light of the key issue in the case.

At the lineup Battles' attorney requested permission to see the identification cards marked by the persons present to observe the lineup, but this request was denied. The defendant claims that, as a result, his right to effective assistance of counsel was curtailed and the lineup was invalid under the precepts of Wade and Gilbert. At a pretrial hearing on defendant's motion to suppress, the district court stated that the lineup procedure was valid and the court also found that the sergeant had a basis independent of the lineup for his in-court identification of Battles.[5]

Wade held that where a lineup is conducted in violation of a defendant's Sixth Amendment right to counsel, no identification testimony by witnesses present at the lineup may be introduced at trial unless it can be shown by "clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification."[6] Gilbert held that introduction at trial of testimony that the witness had earlier identified the defendant at an illegal lineup constitutes a per se violation of exclusionary principles,[7] and that a new trial omitting mention of the lineup identification was mandated.[8]

In the present case evidence of the lineup identification was presented at trial. Thus, under Gilbert, if that lineup had been held in derogation of Battles' constitutional rights, allusion at trial to the lineup proceedings would require reversal, although, since the district court had concluded that the sergeant had an independent recollection of Battles, the policeman would not have been precluded from giving identification testimony that derived from unrelated sources.

1. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

2. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

3. Trial Transcript 82–84, 89.

4. Id. 91–92 (direct examination); 135 (cross-examination).

5. Suppression Hearing Transcript (S.H.) 146–47.

6. 388 U.S. at 240, 87 S.Ct. at 1939.

7. In Wade no testimony regarding the lineup was introduced, and the case was remanded for a determination whether the witness had a basis for independent observations. The situation in Gilbert, where testimony of the lineup was admitted at trial, was expressly distinguished. See Wade, n. 32 and accompanying text, 388 U.S. at 240, 87 S.Ct. at 1939.

8. Of course, if the appellate court determines that introduction before a jury of an illegal lineup identification is harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reversal is not required. However, no harmless error finding would appear appropriate in the situation presented here.

Unlike Judge Aldisert, I do not believe that Sergeant Armstrong's independent basis enabling him to identify the defendant may be used to vindicate the introduction of the lineup testimony if such lineup violated *Wade* and *Gilbert.* Since the lineup did comprise part of the prosecutor's evidence, we may affirm Battles' conviction, that turned to a considerable extent on the identification issue, only if we conclude that the circumstances of the lineup here did not deprive the defendant of his constitutionally protected right to the assistance of counsel.

In support of his position that the lineup here violated the principles of *Wade* and *Gilbert,* defendant cites People v. Williams.[9] In *Williams,* a post indictment lineup was conducted in the presence of the defendant's attorney. After the witness had observed the lineup, but before he manifested any recognition of the suspects, police led the witness outside the presence of the attorney to make his oral identification. The California Supreme Court held such procedure impermissible, pointing out that the rationale supporting *Wade* and *Gilbert* was:

> [T]o enable an accused to detect any unfairness in his confrontation with the witness, and to [be sure] that he will be aware of any suggestion by law enforcement officers, intentional or unintentional, at the time the witness makes his identification. It is not the moment of viewing alone, but rather the whole "procedure by which [a suspect] is identified" that counsel must be able to effectively reconstruct at trial.[10]

Where defendant's attorney was excluded from the critical scene when the witness announced "that's the man,"[11] the California court held that the lineup did not provide adequate safeguards against improper witness suggestion.

The lineup procedure may be divided into three phases: (1) presentation of suspects, (2) recognition by viewers, and (3) manifestation by the viewers of the identification or lack of identification. Each in its own fashion is subject to abuse.[12] The claim here, as in *Williams,* is not that the circumstances surrounding the presentation of the suspects at the lineup were unduly suggestive. Rather, the argument is directed to the potential for abuse inherent in the recognition and voting processes.

In contrast to *Williams,* however, where the defendant's attorney was prohibited from attending the third, or manifestation, portion of the identification procedure, here there are crucial factual differences. In the present case, the circumstances of the lineup were carefully controlled to minimize unfairness or suggestion in the presentation of the suspects as well as in the recognition and voting phases. Moreover, all significant acts of identification and voting took place in the attorney's presence.

Testimony at the suppression hearing disclosed that at the lineup, and in the presence of defendant's attorney:

> Witnesses were seated, isolated from one another, around the viewing room;[13]

> Before the suspects came on to the lineup platform, neither the police personnel conducting the lineup nor the witnesses knew the positions suspects would take or the numbers they would wear;[14]

---

**9.** 3 Cal.3d 853, 92 Cal.Rptr. 6, 478 P.2d 942 (1971).

**10.** 92 Cal.Rptr. at 8, 478 P.2d at 944, quoting People v. Fowler, 1 Cal.3d 335, 348, 82 Cal. Rptr. 363, 461 P.2d 643 (1969).

**11.** 388 U.S. at 236, 87 S.Ct. at 1937.

**12.** *See* Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno,

388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

**13.** S.H. 90 (Testimony of Detective Frank Cupus, who conducted the lineup).

**14.** S.H. 53 (Sgt. Armstrong); 91 (Detective Cupus).

No talking was permitted between witnesses or with police officers during the lineup; [15]

In contrast to the oral identification in Williams, identifications were made by marking on paper ballots, and a record thus exists of identifications; [16]

Ballots were marked before any communication was permitted.[17]

The issue presented on this appeal is whether defendant's counsel may, as a matter of constitutional right, see the marked ballots at the time they are given to the lineup officials. Although the attorney was denied permission at the lineup to see the marked ballots, and although the better course would seem to indicate that defense attorneys see the ballots in such situations, it would not appear that the refusal creates error of constitutional dimension. No allegation is made of irregularities in the presentation or recognition phases of the lineup procedure. Nor is any suggestion made that the ballots in question were altered between the time of the lineup and the following day when they were made available to the attorney.

Under this particular set of facts, and in the absence of any showing or allegation of contrivance or bad faith on the part of the witness or those conducting the lineup, the procedures which occurred here cannot be designated as unconstitutional. Since the lineup as described does not violate the constitutional norms established by the Supreme Court, identification testimony by Sergeant Armstrong, including lineup identification, was properly admitted into Battles' trial.

Because I agree with Judge Aldisert's conclusion that the defendant has set forth no other grounds for reversal, I concur in affirming the judgment of the district court.

Circuit Judge ROSENN joins in this concurring opinion.

---

**15.** S.H. 54 (Sgt. Armstrong); 91–92 (Detective Cupus).

**16.** S.H. 90 (Detective Cupus).

**17.** S.H. 73–75 (Sgt. Armstrong); 90–92 (Detective Cupus).