**UNITED STATES of America,
Appellee,**

v.

**Norman Laverne WILCOX, Appellant.**

**No. 73-2500.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 30, 1974.

Decided Dec. 3, 1974.

Certiorari Denied March 17, 1975.
See 95 S.Ct. 1408.

James J. Caldwell [Court-appointed counsel], Charlotte, N. C., for appellant.

Michael S. Scofield, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The defendant appeals from his conviction for bank robbery on two grounds: One is the refusal to suppress in-court identification testimony allegedly tainted by an illegal pretrial lineup; the other, the admission of the testimony of two so-called "surprise" government witnesses. We find the contentions to be without merit and accordingly affirm the conviction.

The North Graham Street Branch of the First Union National Bank, Charlotte, North Carolina, was robbed in the afternoon of August 31, 1972 by two black individuals. A bank teller and an eyewitness to the robbery, Mrs. Edna Norwood had observed one of the robbers on two separate occasions that day prior to the robbery. The first occasion was as she returned from her lunch hour. When she drove into the bank parking lot, she found a car, driven by the person she later identified as the defendant, parked in her normal parking space. Expecting the car to depart, she waited "for a few minutes," all the time observing the driver of the parked car and being addressed by one of the occupants of the car until the car

vacated the parking space. The driver of the car was thereafter observed by her entering the bank. As Mrs. Norwood was preparing to open her teller window, she saw him in another teller's line. He left but returned about an hour later.

On his return, the driver was accompanied by another smaller individual. The driver was wearing a hat, sun glasses, and a loud shirt which immediately drew Mrs. Norwood's attention, causing her to recognize him as "the same guy that I had seen earlier that day." Both individuals stood in Mrs. Norwood's teller line, slightly to the right of her window, for two to three minutes. Although Mrs. Norwood was waiting on another customer, she testified that she "kept looking at them" because of her earlier experience with the driver. Suddenly, the smaller bank robber shouted, "get him," and the larger of the two, later identified by Mrs. Norwood as the defendant, forced the manager and the assistant manager out of their offices and instructed them to lie on the floor by the vault.[1] While the bank employees and customers were lying on the floor as directed, the smaller robber cleared money from the teller drawers and the larger robber stood to the side of the teller cages, gun in hand, surveying the scene. Mrs. Norwood, forced to the floor on her knees, continued to observe these events. The robbers then fled the bank with $4,197.00 in bank funds.

■■ On January 10, 1973 the defendant was indicted for the bank robbery and arraigned for trial on October 1, 1973.[2] On October 19, 1973, six days before the trial, the district court on the government's motion, ordered the defendant to participate in a lineup. At the lineup, he was required to wear a hat and sun glasses, and to speak the words uttered by the bank robber at the time of the commission of the crime. As a result of the lineup, the defendant was positively identified by Mrs. Norwood as the man she had seen three times on the day of the robbery—first as the driver of the car occupying her parking space and twice later in the bank, including the time of the robbery itself.

At trial, the government's case consisted primarily of the testimony of the bank manager, the testimony of Mrs. Norwood identifying the defendant as the larger of the two unmasked bank

---

1. Neither the manager nor the assistant manager was able positively to identify the defendant at the subsequent lineup. The manager's testimony indicated that he was engrossed in reviewing bank records when the robber entered his office, leveled a revolver in his face, and ordered him to the vault area. In being escorted to the vault area, the robber at all times remained behind and out of view of the managers. Although the manager's initial glimpse of the robber would not permit a positive identification, he was able to describe him in general terms as being a black male, of medium height, about five-eleven, and in his early or mid-twenties.

2. The record indicates that the delay between Wilcox's indictment and trial was due mainly to a trial for an unrelated bank robbery which had been concluded approximately one week before the lineup challenged in this appeal. Moreover, prior to this other trial, the defendant had been held in the custody of the U. S. Marshal in New Haven, Connecticut—the result of his conviction for still yet another unrelated bank robbery.

In light of the defendant's distant trial and confinement, we are constrained to view as meritless his suggestion that the delay in holding the lineup indicated that the government's case was "critically lacking." Neither does the time between the identification and trial, without more, render the lineup *per se* illegal under the proscriptions of United States v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, or on due process grounds under Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401. Delay between crime and identification is normally one factor to be considered by the jury in weighing the reliability of the identification. There are a number of recent cases in which the time interval was about as much as that here and the identification testimony was found admissible. *See* United States v. Hurt (1973), 155 U.S.App. D.C. 217, 476 F.2d 1164 (lapse of 12 months); Souza v. Howard (1st Cir. 1973), 488 F.2d 462, cert. denied, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (lapse of about a year); United States v. King (1972), 149 U.S.App.D.C. 61, 461 F.2d 152 (lapse of 14 months).

robbers, and the testimony of the two allegedly "surprise" government witnesses connecting the defendant to the actual planning and perpetration of the crime.

## I.

It is the defendant's initial contention that the court order requiring him to submit to a lineup and the manner in which it was conducted violated his Fifth Amendment privilege against compulsory self-incrimination, his Sixth Amendment right to assistance of counsel, and his Fourteenth Amendment right to due process.[3] We examine first whether the lineup procedure violated the defendant's Fifth Amendment privilege.

 As in *Wade* and *Gilbert*, we find that neither the lineup itself nor anything Wilcox was required to do in the lineup, violated his privilege against self-incrimination. An accused at a lineup may be required to don disguises worn, to take stances assumed, or to speak words uttered by the perpetrator of the crime.[4]

The major thrust of defendant's argument is, however, that the exclusion of defense counsel from the interview of government counsel with the witness Norwood immediately after the actual confrontation of the defendant and the witness at the lineup amounted to a denial of his constitutional rights as declared in the *Wade-Stovall-Gilbert* trilogy. The factual basis for this claim is that after the confrontation in the lineup parade, the witness was interviewed in the absence of defense counsel to determine whether she could identify any one of the participants. In her initial interview—lasting at most two minutes—Mrs. Norwood, the identifying witness, indicated recognition and requested the opportunity to view the defendant for a second time. This second confrontation occurred in the presence of and without objection from defendant's counsel. After this second viewing, Mrs. Norwood reaffirmed her initial identification. At this point, the government conducted a second interview with the identifying witness and, after the interview was concluded, made the witness available then and there for an unlimited private interview by defendant's counsel. The interview conducted by government counsel lasted approximately fifteen minutes. It is this interview, conducted in the absence of counsel, and immediately before the interview of the same witness by defendant's counsel, that the defendant contends was violative of his constitutional rights. It should be emphasized that, other than the absence of the defendant's counsel from the interviewing of Mrs. Norwood after the actual confrontation in the lineup, the record is devoid of even the slightest indication of suggestive influence;[5] nor does the defendant contend that there was any. We therefore turn directly to the defendant's contention that the mere absence of counsel at the interview of Mrs. Norwood, after the formal confrontation in the lineup was concluded, called for the suppression of her in-court identification under the rationale of *Wade-Gilbert-Stovall*.

 There is no dispute that the *Wade-Gilbert-Stovall* trilogy clearly man-

---

3. United States v. Wade, *supra*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Denno (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199.

4. *Wade*, 388 U.S. at 221–23, 87 S.Ct. 1926; *Gilbert*, 388 U.S. at 266, 87 S.Ct. 1951; United States v. Jones (4th Cir. 1971) 443 F.2d 1077.

5. The witnesses were instructed neither to talk nor to communicate with one another

during or after the lineup. They were then collectively taken into a viewing room where they observed a parade of five individuals, the defendant and four others of similar build and appearance. Each participant was identified only by number. After the parade, each participant was exhibited individually wearing a hat and sun glasses similar to those worn by the bank robber. Defense counsel was present at each of these stages of the proceedings and could point to no instance of suggestion.

dates the presence of counsel at an identification lineup where there is a "confrontation compelled by the State between the accused and the victim or witnesses to a crime." [6] These authorities go farther and make it equally clear that in-court identification testimony will be excluded if it follows confrontation had in the absence of counsel, unless it can be shown that the in-court identification had an independent source or constituted harmless error. The rule so promulgated is generally declared to be an extension of the principle expressed initially in Powell v. Alabama (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158,[7] that presence of counsel is constitutionally required at every critical stage of the criminal prosecution; [8] and a "critical stage" for Sixth Amendment purpose exists whenever "substantial rights" of the accused may be adversely affected, Mempa v. Rhay (1967), 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336. Accordingly, " * * * the principle of Powell v. Alabama and succeeding cases requires that we [as a Court] scrutinize *any pretrial confrontation of the accused* to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." [9] Based on such an analysis, *Wade* found that when "the accused is exhibited to identifying witnesses",[10] or, as the majority opinion in United States v. Ash (1973), 413 U.S. 300, 314, 93 S.Ct. 2568, 37 L.Ed.2d 619, stated it, when the accused is subjected to a lineup constituting "a trial-like confrontation", or, as Justice Stewart puts it in his concurring opinion in *Ash*, when "the prosecution presents the suspect to witnesses for pretrial identification," [11] constitutes an event where such "potential substantial prejudice" may be suffered by an accused as to qualify as a "critical stage of the criminal prosecution." [12] It is this "trial-like confrontation of the accused and the prosecutorial system" [13]—this "confrontation * * * between the accused and the victim or witnesses to a crime" [14]—this confrontation when "the accused is exhibited to identifying witnesses," [15] often under conditions where

6. 388 U.S. at 228, 87 S.Ct. at 1933.

7. *Powell* was rested on the Fifth Amendment and not the Sixth Amendment, but nonetheless it is regarded generally as the precursor of the *Wade* rule.

8. *See* 388 U.S. at 226, 87 S.Ct. at 1932:
 " * * * It is central to that principle [of Powell] that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial."

9. 388 U.S. at 227, 87 S.Ct. at 1932 (Italics added).

10. 388 U.S. at 272, 87 S.Ct. at 1956.

11. 413 U.S. at 323, 93 S.Ct. at 2583.

12. 388 U.S. at 227 and 272, 87 S.Ct. at 1956. *Cf.*, 388 U.S. at 239, 87 S.Ct. at 1938:
 "Legislative or other regulations, such as those of local police departments, which eliminate the risk of abuse and unintentional suggestion at lineup proceedings and the impediments to meaningful confrontation at trial may also remove the basis for regarding the stage as 'critical.'"

 In keeping with this thought, some commentators have suggested that the requirement of counsel could be obviated if the police authorities would make films of the lineup. Note, Right of an Accused to the Presence of Counsel at a Post-Indictment Lineup, 9 Wm. & Mary L.Rev. 528, 533 (1967); Note, United States v. Wade—Right to Counsel at Pre-Trial Lineup, 63 Nw.U.L. Rev. 251, 261 (1969).

13. *See*, Note, Criminal Law—Right to Counsel—Sixth Amendment Does Not Grant Accused the Right to Counsel at Pre-Trial Photographic Display, 26 Vand.L.Rev. 1323, 1327–8 (1973); United States v. Ash, *supra*, 413 U.S. at 314, 93 S.Ct. 2568.

14. 388 U.S. at 228, 87 S.Ct. at 1933.

15. 388 U.S. at 272, 87 S.Ct. at 1956.

he is compelled to act, talk or dress in what may be a suggestive manner creating a substantial potential for misidentification, and where, because of nervous tension or inexperience, he is unlikely to be able to correct at the time or reconstruct later at trial the improperly suggestive manner of presentation without the assistance of counsel, that make the occasion a "critical stage in the prosecution", forcing the presence of counsel.[16] Thus in *Wade,* the Court, elaborating on its conclusions, referred to the possibility of "mistaken identification" and "miscarriage of justice" which may result from "the manner in which the prosecution presents the suspect to witnesses for pretrial identification" and the difficulty of securing a "meaningful confrontation" on the issue of prosecutorial prejudicial lineup procedures in an accurate reconstruction of the lineup procedures in the absence of counsel.[17] As *Ash* makes clear, however, it was not so much the "lack of scientific precision and inability to reconstruct an event" as "whether confrontation with counsel at trial can [could] serve as a substitute for counsel at the pretrial confrontation," that actually represented the test that made the presence of counsel obligatory at a lineup confrontation.[18] It follows, therefore, that the requirement of counsel, as mandated under *Wade* and related cases, is limited in application "to the period during which an accused is within sight of a potential identification witness,"[19] or, as *Ash* puts it, quoting from *Wade,* at the point where there is a "pretrial confrontation, with the State aligned against the accused,"[20] for the Sixth Amendment [as developed in *Wade*] applies only to personal confrontations between the accused and the state.[21] To repeat, this confrontation of the accused and the witnesses is the particular period when there is that opportunity for "potential substantial prejudice" through misidentification, that makes presence of counsel obligatory.[22] And this is the construction that has been given *Wade* from the outset.

In both United States v. Bennett (2d Cir. 1969), 409 F.2d 888 and United States v. Cunningham, *supra,* two early Circuit cases decided after Wade, the Court refused to go beyond "the actual

---

16. *See* 388 U.S. 224–27, 87 S.Ct. 1926.

 *See, also,* Note, United States v. Wade—Right to Counsel at Pre-Trial Lineup, 63 Nw.U.L.Rev. 251, 255 (1969), where it is stated that *Wade* is predicated on the Sixth Amendment, "specifically the right of an accused to confront the witnesses against him and the attendant implied right of cross-examination."

17. 388 U.S. at 227–228, 87 S.Ct. at 1933.

18. 413 U.S. at 316, 93 S.Ct. at 2577.

19. United States v. Cunningham (4th Cir. 1970), 423 F.2d 1269, 1274, n. 3.

20. 413 U.S. at 311, 93 S.Ct. 2568 and 388 U.S. at 235–6, 87 S.Ct. 1926, 1937.

21. *See* 413 U.S. at 309–12, 93 S.Ct. 2568.

 *See, also,* Grano, Kirby, Biggers, and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent? 72 Mich.L.Rev. 719, 761, n. 276. In this article, the author, in elucidating on the holding in *Ash,* said the question there decided was "not whether counsel can help to guarantee a fair trial but whether the defendant required counsel's assistance in a *confrontation* with the procedural system or a skilled adversary. Since the defendant's presence is a *sine qua non* of confrontations, the sixth amendment right to counsel does not extend to procedures, such as photographic displays, that do not personally involve the defendant."

22. In so restricting the scope of the rule, the Court was necessarily making a judgment on the degree of "potential for prejudice" required to mandate presence of counsel and stated it in terms of "grave potential for prejudice." 388 U.S. at 236–237, 87 S.Ct. 1926. It has been aptly observed that if the mere possibility of prejudice is regarded as sufficient to compel the presence of counsel, "the result would be the presence of a very harried and disgruntled attorney at every stage of criminal investigation wherein the slightest taint of prejudice to the defendant might inhere." Note, Extension of the Sixth Amendment Right to Counsel—The Road from Wade to Ash, 7 U. of Rich.L.Rev. 139, 149 (1972). However, *Wade* very carefully circumscribes its ruling and, weighing the possible "prejudice", fixes the boundaries of its rule as the time period involved in the actual setting up and operation of the confrontation of accused and witness.

confrontation between the accused and the victim or witnesses to a crime" in applying *Wade*. Both of these cases and their holdings are cited and discussed by Judge Wilkey in his dissenting opinion in United States v. Ash (1972) 149 U.S. App.D.C. 1, 461 F.2d 92, 112–113, an opinion which was substantially affirmed by the Supreme Court. 413 U.S. 300, 93 S.Ct. 2568. In this dissent, Judge Wilkey said:

> "In one of the earlier circuit decisions after *Wade,* Judge Friendly correctly appraised the limits of *Wade:*
> '. . . to require that defense counsel be allowed or appointed to attend out-of-court proceedings where the defendant himself is not present would press the Sixth Amendment beyond any previous boundary.' In United States v. Cunningham a witness at a lineup was interrogated outside the presence of both the accused and his counsel *as to the witness's identification*. The Fourth Circuit held this procedure entirely proper, Judge Winter saying:
>
>> " 'Here, the lineup was terminated and witnesses were being interrogated outside of the presence of suspects. Confrontation had occurred and was terminated. By the rationale of *Wade* and *Gilbert,* counsel *was no longer required unless we were prepared to hold that defense counsel must be present whenever the government interrogates a wit-*

ness whose testimony may be used as part of the government's case at trial.' " (Footnotes omitted.)

■ It is obvious that, if the requirement of counsel applies solely to the period of confrontation between the accused and the witnesses, as these authorities declare, then the subsequent interrogation of the witnesses by the prosecution as to whether they identified the accused or not at the lineup parade does not present that "serious potential for prejudice [that occurs] in confrontation between an eyewitness and a suspect," where counsel is required.[23] And such, with a single exception,[24] is the uniform holding of the authorities. One of the leading cases so holding is United States v. Cunningham, *supra*.[25] In that case, counsel was present at the lineup parade but, because of some argument between counsel for the government and counsel for the defendant,[26] the latter was ejected. It was while counsel for the defendant was absent that the in-court identification witness "picked [the accused] from the lineup." The defendant asserted that the interrogation of the identifying witness in the absence of counsel was constitutionally invalid, thus raising the same issue as does the appellant in this case. In dismissing the claim, the Court said (423 F.2d p. 1274):

> "The interrogation of witnesses in the investigation of crime or in the preparation for trial is not limited by the rules of evidence or the order of

---

23. Note, The Right to Counsel at Pre-Trial Lineups, 42 UMKC L.Rev. 251, 252 (1973).

24. People v. Williams (1971) 3 Cal.3d 853, 92 Cal.Rptr. 6, 478 P.2d 942, a 4–3 decision, is the only contrary authority. This case, it would appear is weakened by the subsequent decision of the same court in People v. Lawrence (1971) 4 Cal.3d 273, 93 Cal.Rptr. 204, 481 P.2d 212, which upheld an identification made in the absence of counsel on a viewing of a picture of a simulated lineup. In so holding, "The Court observed that the need for any identification at the time of viewing outside the context of a formal lineup was slight." 1972 Utah L.Rev. 100 at 102. *See* 481 P.2d at p. 215. *Williams,* also, was rejected in State v. Favro (1971) 5 Wash.App. 311, 487 P.2d 261.

25. Professor Grano in his article cited *supra,* instances this case by way of contrast with People v. Williams, *supra,* as authority for the proposition that the presence of counsel is not required at identification immediately after lineup. 72 Mich.L.Rev. at 726, n. 53.

26. *Cf.,* Note Lawyers and Lineups, 77 Yale L.J. 390, 397–8. In this article, the author deals with the role of counsel at the lineup: May he engage in "obstructionist efforts in a stationhouse" as the Government contended was the case in *Cunningham,* or is his role largely "that of a witness"? In *Ash, supra,* Justice Stewart described the role of counsel "primarily as an observer." 413 U.S. at 324, 93 S.Ct. 2568.

proof, and conscious or unconscious attempts to lead witnesses may occur. We do not think that these dangers are any greater in the case of identification witnesses than witnesses who possess other types of knowledge with regard to the commission of a crime. It is not claimed that to date the Supreme Court has required the presence of counsel during the interrogation of all witnesses, and we will not so require with regard to the interrogation of identification witnesses once the actual confrontation has been completed."

Doss v. United States (9th Cir. 1970) 431 F.2d 601 is to the same effect. There, as here, the defendants conceded the lineup itself was not unfairly conducted. Counsel was present at the confrontation but, as here, they complained that they were not permitted to listen to and hear the remarks passing between the witnesses and the officers "both during the proceeding and immediately afterward." After observing that the rule in *Wade* is predicated on a finding of "grave potential for prejudice" during the confrontation, the Court said (431 F.2d pp. 603–604):

"The rationale and decision in *Wade* is epitomized in the following quotation:

" 'Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup which may not be capable of reconstruction at trial and since the presence of counsel itself can often avert prejudice and assure meaningful confrontation at trial, there can

be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was "as much entitled to such aid" [of counsel]—as at the trial itself.' ([388 U.S. at] p. 237, 87 S.Ct. at p. 1937)

"The grave 'potential for prejudice,' of course refers to the likelihood of a mistaken identification of a suspect in a lineup, and as the Court carefully pointed out, the probability of such an error in judgment is most often due to 'the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for identification.' Significantly the Court noted that cross-examination at the trial often affords an adequate means to protect the accused but that a witness at a lineup can be subjected to subtle influences of which he may not be aware—for example, the composition of the lineup, distinctive dress of the subject, etc. Cross-examination might very well not suffice to disclose such covert improprieties as those mentioned in *Wade*, but we do not believe that the ordinary witness is so unlikely to be schooled in the detection of influences, consisting of verbal suggestions, that he could not recall them on cross-examination. In sum, we conclude that *Wade* does not support appellant, that the ordinary witness is capable of recalling and recounting conversations concerning the identity of a suspect and that the prosecution need not, in effect, permit defense counsel to 'sit in' on conferences with prospective witnesses." [27]

27. *See, also,* State v. Favro, *supra,* 5 Wash. App. 311, 487 P.2d 261 where, in denying a claim of invalid identification on the same grounds as are pressed here, the Court said (pp. 262–263):

" \* \* \* His objection was to the identification of the suspect out of his presence following the lineup. It is urged that the identification is a part of the lineup and the lineup is therefore not completed until the identification is made. We disagree. While it may be good procedure to identify the accused at the lineup, identification follows the lineup. The

purpose of counsel at the lineup is to prevent impermissible suggestiveness or influence at the lineup proceeding. Mr. Favro argues that the police might improperly assist the eyewitness in the identification following the lineup. This unfortunate possibility is present throughout the pretrial proceedings up to the time of in-court testimony by the eyewitness. Skillful cross-examination is the remedy for such purported misconduct. To hold otherwise is to require the presence of counsel whenever a witness who will testify about the identity of the ac-

To the same effect is United States v. Banks (5th Cir. 1973), 485 F.2d 545, 546, 548, cert. denied, 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764. In that case, all the witnesses "viewed the lineup and then adjourned with the two FBI agents to a side room before giving an initial response as to the identity of any of the men in the lineup. Counsel for defendants observed the lineup, its preparation and execution, but was not permitted to enter the side room where the witnesses were taken to give their initial responses." The Court pointed out that, "[T]he witnesses were not prohibited from talking with counsel for the accused after giving their initial responses privately to the FBI agents." The Court held that in such situation, which parallels so closely the circumstances of this case, the procedure followed "did comply with the constitutional specifications of Wade and Gilbert, and that defendants were not denied effective assistance of counsel."

In principle Ash, too, supports the ruling of the District Court. After all, the identification of the accused in an interview after a photographic display cannot be distinguished in principle from the identification after a lineup, assuming that the lineup has been validly conducted. In either event, whether the identification was made after a physical viewing of the lineup or after a photographic display, "the possibility of irretrievable prejudice" in an identification, "is remote, since any unfairness that does occur can usually be flushed out at trial through cross-examination of the prosecution witnesses," and certainly too "remote" to constitute such inter-

view a " 'critical stage' of the prosecution".[28] This is particularly true if the accused is given, as he was in this case, equal pretrial access to the identification witness. It was this equal access which the Court in Ash found removed any inequity in the adversarial process and satisfied the goal of professional parity implicit in the Sixth Amendment guarantee.[29]

We conclude, therefore, that there was no error in the District Court's ruling that the absence of counsel at the interrogation of the identifying witness, following the actual confrontation of the accused and the witness, did not taint the witness' pretrial identification. We are confirmed in this view by the absence of any evidence or even claim of suggestiveness in the interrogation itself of the accused. Cf., United States v. Banks, supra.

Even were there some defect in the lineup parade or subsequent confrontation, the in-court identification testimony of Mrs. Norwood would still be admissible as based on an independent source. Wade at 241 of 388 U.S., 87 S.Ct. 1926; United States v. Cunningham at 1275, of 423 F.2d; Stanley v. Cox (4th Cir. 1973) 486 F.2d 48, 55, cert. denied, 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309. The record indicates clearly and convincingly that Mrs. Norwood's in-court identification stemmed from her observations on the date of the crime rather than her viewing of the defendant at the challenged lineup; in fact, this is the plain purport of her testimony that she "never really forgot what he looked like." [30] Mrs. Norwood was train-

---

cused is interrogated by the police. * * * The goal is to detect any unfairness in the confrontation between the witness and the accused and to insure that any suggestion made at that time by the law enforcement officer, either intentionally or unintentionally, is observed. The basis for the requirement of the presence of counsel is the presence of the accused when confronted by the witness or witnesses." (Emphasis in the opinion.)

In Ash, the Court said (p. 318, 413 U.S., P. 2578, 93 S.Ct.) :

" * * * The traditional counterbalance in the American adversary system for these interviews arises from the equal ability of defense counsel to seek and interview witnesses himself."

28. 413 U.S. at 325, 93 S.Ct. at 2581. See, also, United States v. Cunningham, supra.

29. 413 U.S. at 319, 93 S.Ct. 2568.

30. DEFENSE COUNSEL: So the first time you picked him it was not on account of his facial appearance?
MRS. NORWOOD: When he first—

ed to be observant of faces; her responsibilities as a teller demanded such expertise on her part. She had ample opportunity to observe the defendant, first in the bank parking lot under normal, daylight conditions and later in the bank both prior to and during the robbery. The bank robbers were unmasked. While Mrs. Norwood was unable to tell whether or not the defendant was clean shaven at the time of the robbery, it is clear that the mental image from which she identified the defendant stemmed from her observations prior to the lineup. Although she could not recall the color of the clothes worn by the defendant or other participants at the lineup, she had little difficulty describing his dress on the day of the robbery. She also indicated differences in the defendant's appearance on the date of the robbery and his appearance at trial or at the lineup—e. g., the longer length of his sideburns and his "Afro-bush". Despite intensive examination by defense counsel, as indicated by the colloquy set out in note 30, Mrs. Norwood's identification was unwavering, certain, and clearly the result of a source independent of the lineup and admissible as such.

## II.

The defendant's second argument challenges the District Court's admission of the testimony of Olethia Gibbons and Horace Brewer. It is his contention that the government informally agreed to make available to defendant's counsel its file, and that such file, when made available, included no statements procured from either Gibbons or Brewer. The subsequent calling of these witnesses by the government, it is argued, took the defendant unfairly by surprise, requiring suppression of their testimony under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

It is clear that the action of the District Court in admitting the testimony of these two witnesses will not justify reversal. Their testimony was not exculpatory and was accordingly not within the *Brady* rule. *Moore v. Illinois* (1972) 408 U.S. 786, 794–798, 92 S.Ct. 2562, 33 L.Ed.2d 706, reh. den., 409 U.S. 897, 93 S.Ct. 87, 34 L.Ed.2d 155; *United States v. Anderson* (4th Cir. 1973), 481 F.2d 685, 689–691, aff., 211 U.S. 417, 94 S.Ct. 2253, 41 L.Ed.2d 21. Even had the government procured statements from these witnesses in memoranda setting forth their testimony, it was not obligated to furnish such statements to the defendant prior to trial itself. Rule 16(b), Fed.R.Crim.P.; 18 U.S.C. § 3500; *United States v. Westmoreland* (D.C.Ind.1967), 41 F.R.D. 419, 424. It is the government's position, however, that it had no written statements from these two witnesses or even memoranda giving the substance of their testimony. It offered evidence that it only discovered that these witnesses could give any pertinent evidence as the trial was beginning. Government counsel certified to the Trial Court that he had never had any written statement

---

DEFENSE COUNSEL: You did not recognize his facial appearance, did you?
MRS. NORWOOD: Yes.
 * * * * *
DEFENSE COUNSEL: You are saying now that you did?
MRS. NORWOOD: Yes. That's why I asked to see him again.
 * * * * *
DEFENSE COUNSEL: So now you are saying that you did or did not recognize?
MRS. NORWOOD: I did. I picked Number Two.
DEFENSE COUNSEL: From his looks?
MRS. NORWOOD: From when he walked in the door the very first time I picked Number Two.

DEFENSE COUNSEL: You picked him?
MRS. NORWOOD: Yes Sir.
DEFENSE COUNSEL: Uhuh. Now, did your seeing him in this line-up refresh your recollection as to what the person looked like that came into the bank, having seen him last Friday does that now refresh your memory as to what the man looked like who came into the bank?
MRS. NORWOOD: *I never really forgot what he looked like.*
DEFENSE COUNSEL: You say you never have really forgotten?
MRS. NORWOOD: No.
Trial Transcript at 29, 35 (Italics added).

374

from Gibbons and that he had only rough notes of an FBI interview with Brewer after the trial had begun. A copy of these notes was furnished to defendant's counsel prior to Brewer's cross-examination, which is all the defendant was entitled to under § 3500, 18 U.S.C. It is clear the government did not suppress any evidence in its file as made available to defendant's counsel and that it acted in good faith. United States v. Zammiello (9th Cir. 1970), 432 F.2d 72; United States v. Panzar (5th Cir. 1969), 418 F.2d 1239. Under the circumstances, it was clearly within the discretion of the District Court to admit the testimony of the two witnesses and the exercise of that discretion will not be disturbed on appeal.

Affirmed.