[Crim. No. 37167. Second Dist., Div. Five. Nov. 13, 1980.]

In re MICHAEL E., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL E., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Robert Scarlett, Deputy State Public Defender for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, P. J.—The juvenile court sustained a petition alleging that appellant minor Michael E. had committed burglary. A previous order for camp community placement was ordered to remain in force. Michael appeals claiming that his confession was the result of an illegal detention and should not have been admitted; he also complains that the interrogating officer failed to provide him with the attorney who was representing him in another matter and did not inform him of his right to make a phone call to that attorney. (Welf. & Inst. Code, § 627, subd. (b).) Finally, he asserts that he was denied due process because the jurisdictional hearing was conducted by a referee, rather than a judge.

FACTS

The burglary in question took place sometime between 9:30 a.m. and 10:30 p.m. on November 28, 1979. Michael was arrested by the Long Beach police at about 8:30 p.m. on November 30, a Friday. He was

booked at 9:40 and kept overnight in a detention area reserved for juveniles. The probation department maintains a so-called "intercept officer" at the station, but he usually leaves at about 9 p.m. Five minutes after Michael was booked, his parents were notified (Welf. & Inst. Code, § 627, subd. (a).) Michael spent the night in one of the cells in the juvenile division.

At noon on Saturday, December 1, Michael was interviewed by Officer Mifflin of the Long Beach Police Department, then assigned to the juvenile division burglary detail. Mifflin's own working hours were 7:30 a.m. to 5:30 p.m. It is the policy of the Long Beach Police Department not to permit minors to see an intercept officer before the minor has been interviewed by a police officer. The reason why Mifflin did not get around to interviewing Michael until noon was that on Saturdays only two investigating officers are on duty. The sergeant assigned the "numerous" juveniles—about 20—who were in custody to the 2 officers, who then had to study the arrest reports and other paper work before starting the interviews. Mifflin did not receive the report concerning Michael's arrest until 10 o'clock.

Before interrogating Michael, Mifflin properly advised him of his *Miranda* rights. He did not, however, advise him that he could talk to a particular attorney who had been representing Michael in another matter. Michael asserted that he had asked whether he could "get the same lawyer," but Mifflin specifically denied that such a request had been made.

On the subject of the two telephone calls permitted by subdivision (b) of section 627 of the Welfare and Institutions Code, Mifflin testified that "[t]he phone calls are the responsibility of the jail division. I don't know if the minor made phone calls or not.... The paper work does not indicate that the minor made any phone calls."[1] Michael, himself was never asked whether he made any telephone calls after being booked in the evening or whether he was advised of his right to do so.

In any event, after a few false starts, Michael confessed.

---

[1]The record does not indicate whether the papers Mifflin consulted would have shown that Michael made a phone call. As far as the phone calls being the responsibility of the jail division is concerned, the practice could hardly have been otherwise since an arrested minor must be permitted his telephone calls "no later than three hours after he has been taken into custody...." (Welf. & Inst. Code, § 627, subd (b).)

## Discussion

Michael claims that his confession was the product of an illegal detention because 16 hours after his arrest he should not have been at a Long Beach police station but in the custody of his probation officer. He argues that the statutory directives—particularly sections 626 and 628 of the Welfare and Institutions Code[2]—on the processing of minors who have been taken into custody by peace officers demonstrate "a legislative intent against the prolonged detention *and interrogation* that took place in appellant's case."

Section 626, subdivision (c) demands that unless a peace officer who has arrested a minor releases him, he should "take such minor *without unnecessary delay* before the probation officer...." (Italics added.) Once the minor is in the hands of the probation officer, the provisions of section 628 come into play. That section sets forth the various options—release, detention and so forth—eventually open to the probation officer who must, however, "immediately investigate the circumstances of the minor and the facts surrounding his being taken into custody ...." (§ 628, subd. (a).)

If the issue were one of first impression, it would certainly be arguable that a detention of a few hours is not "unnecessary" even if its sole purpose is to question the minor. After all, the results of such questioning may illuminate "the facts surrounding" the minor's being taken into custody. The fact is, however, that the phrase "without unnecessary delay" has acquired considerable gloss in connection with interpretations of sections 825 and 849 of the Penal Code, as well as former section 8—now 14—of article I of the California Constitution, all of which contain provisions commanding that persons arrested under certain circumstances be taken before a magistrate "without unnecessary delay"—the precise language later written into section 626. Obviously this choice of words was intended to incorporate and adopt the judicial interpretations of cognate statutes and constitutional provisos. (*People v. Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33].)

■ Some of the authorities identifying legitimate reasons for delay are noted below.[3] Whether or not these cases are totally reconcilable is

---

[2]Unless otherwise noted all statutory references are to the Welfare and Institutions Code.

[3]*Mallory v. United States* (1957) 354 U.S. 449, 455 [1 L.Ed.2d 1479, 1483, 77 S.Ct. 1356] [quick verification of story volunteered by suspect]; *People v. Powell* (1967) 67

irrelevant; the one rule they agree on—from *Mallory v. United States* (1957) 354 U.S. 449, 455 [1 L.Ed.2d 1479, 1483, 77 S.Ct. 1356], through *People v. Powell* (1967) 67 Cal.2d 32, 60 [59 Cal.Rptr. 817, 429 P.2d 137] to *People v. Johnson* (1978) 85 Cal.App.3d 684, 689 [149 Cal.Rptr. 661]—is this: delay for the sole purpose of questioning is "unnecessary."[4]

The People suggest no purpose other than questioning for detaining Michael until after midday on December 1. We too have flyspecked the record and find none. Granted that it may have been reasonable to bed him down for the night on November 30 after the "intercept" officer had left, admittedly the only reason why he was not turned over to the probation department during the morning of December 1 was the Long Beach Police Department's policy not to do so until questioning was completed. Section 626 was obviously violated.

■ Nevertheless, the confession was admissible under current law. There is no contention that the minor's initial arrest was illegal. (Cf., *Brown v. Illinois* (1975) 422 U.S. 590, 601-604 [45 L.Ed.2d 416, 425-428, 95 S.Ct. 2254]; *People v. DeVaughn* (1977) 18 Cal.3d 889, 897 [135 Cal.Rptr. 786, 558 P.2d 872].) California continues to reject the so-called *McNabb-Mallory* rule that any confession obtained during an illegal detention is inadmissible. (*People v. Haydel* (1974) 12 Cal.3d 190, 199 [115 Cal.Rptr. 394, 524 P.2d 866]; *In re Walker* (1974) *supra*, 10 Cal.3d 764, 779; cf., *People v. Pettingill* (1978) 21 Cal.3d 231, 243-244 [145 Cal.Rptr. 861, 578 P.2d 108].) Thus, although Michael had been held at the police station longer than section 626, subdivision (c) permits, this did not make his confession inadmissible.

---

Cal.2d 32, 60 [59 Cal.Rptr. 817, 429 P.2d 137] [ditto]; *In re Walker* (1974) 10 Cal.3d 764, 778 [112 Cal.Rptr. 177, 518 P.2d 1129] [hospitalization]; *People v. Johnson* (1978) 85 Cal.App.3d 684, 689 [149 Cal.Rptr. 661] [to prepare and evaluate case before filing complaint; clerical and administrative needs]; *People v. Williams* (1977) 68 Cal.App.3d 36, 43 [137 Cal.Rptr. 70] [health considerations; to evaluate evidence for limited purpose of determining what charge is to be filed]; *Stanley v. Justice Court* (1976) 55 Cal.App.3d 244, 250 [127 Cal.Rptr. 532] [possibility that brief investigation might exonerate arrestee and obviate need for formal criminal proceedings]; *People v. King* (1969) 270 Cal.App.2d 817, 823 [76 Cal.Rptr. 145] [to untangle a "skein of circumstantial evidence" for purpose of determining which of five suspects should be charged].

[4]*Mallory*: "[T]he delay must not be of a nature to give opportunity for the extraction of a confession." *Johnson*: "A delay which is occasioned by the conscientious performance of police and which is utilized for the purposes of clerical and administrative needs *and not used solely for the purpose of eliciting damaging statements from the accused is not an unreasonable delay*." (Italics added.)

Michael further claims that the confession was inadmissible because he had asked to consult with the attorney who was representing him in another case. As we have noted, that version of the conversation was contradicted by Officer Mifflin and apparently not accepted by the trial court.[5]

Michael argues that he should have been informed of his statutory right to make a phone call to his attorney within three hours after his arrest and that, had he been so informed, he would have reached the attorney and would have been advised not to make any statements to the police.[6] While this argument poses a novel issue, we cannot reach it on the record before us which, as noted, is silent on whether Michael was advised of his right to a phone call and inconclusive on whether a call was made or attempted.

■ Finally, Michael claims that he was denied due process of law because, over his objection, a juvenile court referee rather than a judge presided at the jurisdictional hearing. Michael concedes, as he must, that the jurisdictional hearing in this case was conducted before the opinion in *In re Perrone C.* (1979) 26 Cal.3d 49 [160 Cal.Rptr. 704, 603 P.2d 1300], became final. The point has no merit. (*Id.*, p. 58.)

Affirmed.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 7, 1981. Bird, C. J., and Newman, J., were of the opinion that the petition should be granted.

---

[5]Apart from the fact that Michael's testimony was contradicted by Mifflin, the court was certainly entitled not to accept everything Michael said as gospel truth: (1) when his attorney—the same one who represented him on the other matter—first asked him whether he would have said anything to Mifflin if he had thought that counsel could be there, Michael first answered "No." Only when the question was repeated in leading form—"Would you have asked for me?—did Michael answer "Yes." (2) At one point when the court asked Michael whether he had asked Mifflin if he, Michael, could talk to the particular attorney, Michael answered "No."

[6]Michael testified that he carried the attorney's card with his business telephone number.